*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. KRISTOFFERSON, Minor.

UNPUBLISHED
May 16, 2024

No. 368805
Ingham Circuit Court
Family Division
LC No. 22-000106-NA

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating his[1] parental rights to his minor child, AK, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

In February 2022, the Department of Health and Human Services (DHHS) alleged that respondent was providing inadequate supervision to AK, noting that a violent altercation occurred between respondent and AK's father.[2] During the altercation, respondent cut father with a knife while he held AK, and, after father set AK down, AK rolled off the bed and onto the ground. DHHS requested that the trial court remove AK from respondent's care and exercise jurisdiction. The petition was authorized, AK was removed and placed with a relative,[3] and the court granted respondent supervised parenting time.

During a pretrial hearing in March 2022, respondent entered a plea to jurisdiction under MCL 712A.2(b)(2) (unfitness of parental home). Respondent admitted that he had untreated

---

[1] Respondent-mother indicated at the start of the proceedings that he prefers male pronouns, which we will use herein.

[2] AK's father voluntarily relinquished his parental rights during these proceedings, and is not a party to this appeal.

[3] AK was later removed from her relative placement and placed in an unrelated foster home.

mental-health issues, had requested psychiatric treatment for his untreated mental-health issues, and could not provide immediate care to AK because he was in county jail for the violent altercation with AK's father. Respondent pleaded no-contest to DHHS's allegations of improper supervision because of the altercation with father while AK was present and that there was a no-contact order between respondent and father. The trial court exercised jurisdiction, continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted. The court ordered respondent to participate in and benefit from substance-abuse treatment, parenting education, and mental-health services. The court also ordered respondent to complete substance-abuse and psychological evaluations, submit to random drug screenings, and participate in parenting time.

Respondent's participation in and benefit from the case service plan was poor. Respondent completed a psychological evaluation, but failed to participate in mental-health services. Respondent completed a parenting-support and education program, but demonstrated no benefit. Respondent's parenting coach recommended that respondent's parenting times remain supervised because she did not believe that unsupervised visits would be safe for AK until respondent progressed in counseling. Respondent never completed an intake at a counseling facility, so he never began domestic-violence therapy, anger-management therapy, or dialectical behavioral therapy (DBT) as recommended. Respondent never completed an intake at a substance-abuse treatment facility, so he never completed a substance-abuse assessment or recommended treatments. Respondent frequently missed drug screens, and consistently tested positive for tetrahydrocannabinol (THC)[4] when he did complete them. Respondent missed 46 of 132 of his scheduled parenting time. During the parenting time that respondent did attend, respondent was inattentive and failed to meet AK's needs.

In July 2023, DHHS—at the trial court's direction—filed a supplemental petition requesting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g),[5] and (j). At the termination hearing, respondent's caseworker testified that DHHS provided numerous services to respondent, but respondent failed to participate. Respondent was dismissed from services at a counseling center for failing to participate, and he never completed an intake to begin domestic-violence, anger-management, and counseling services at another facility. Respondent never completed an intake for a substance-abuse facility, so he never began substance-abuse

---

[4] THC is the primary psychoactive substance in marijuana. Marijuana is now legal for recreational use in Michigan under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*. However, if a parent's use of marijuana creates an unreasonable danger to a minor "that can be clearly articulated and substantiated," the person can be "denied custody of or visitation with a minor." MCL 333.27955(3). Trial courts are generally required to evaluate a parent's marijuana use in the same manner as alcohol or any other legal intoxicant. The relevant inquiry is whether use of the substance will have a negative effect on a parent's ability to parent, or will cause a risk of harm to the child. *In re Richardson*, 329 Mich App 232, 252; 961 NW2d 499 (2019). Respondent was expressly ordered to abstain from using marijuana until he obtained a medical marijuana card, which he did not do until approximately one month before the termination hearing.

[5] Counsel for DHHS voluntarily struck subdivision (g) from the supplemental petition.

services. Respondent regularly reported that he was consistently attending counseling and substance-abuse appointments or had upcoming appointments, but his caseworker repeatedly verified with the facilities that respondent was not attending. Respondent missed many drug screenings, or he tested positive for THC when he did complete them. Respondent testified that he knew he could not use marijuana until he obtained a medical marijuana card, but he continued to use marijuana nonetheless. Respondent did not obtain a medical marijuana card until a month before the termination hearing, and his caseworker was unable to verify its legitimacy because respondent never provided her with a copy.

Respondent's caseworker testified that respondent completed a parenting-support and education program, but the parenting coach recommended that parenting time remain supervised until respondent addressed his mental-health issues. Respondent never progressed to unsupervised parenting time because he consistently missed parenting time and never demonstrated that he could adequately and safely care for AK. Respondent continued to miss parenting time after DHHS filed its supplemental petition. At parenting time, respondent was on his phone, did not directly interact with AK, was inattentive, did not attend to AK's needs, and did not redirect AK out of potentially dangerous situations. Respondent's caseworker testified that respondent made no effort to engage in any services until he began counseling at a facility of his own choosing one month before the termination hearing, but respondent only did so because the judge presiding over his criminal matters threatened to place him in jail if he did not participate in counseling as required by his probation.

Respondent's caseworker testified that termination was in AK's best interests because AK had been in DHHS's care nearly her entire life, and respondent had not demonstrated that he could provide AK with the consistency, permanency, and stability that she needed. The caseworker further stated that while respondent was bonded to AK, AK was not bonded to respondent. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j) because DHHS established those statutory grounds by clear and convincing evidence and termination was in AK's best interests. This appeal followed.

## II. STANDARD OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence and that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even if some evidence supports the finding, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*. at 41. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court gives deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

### III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We disagree.

A court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds clear and convincing evidence of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination is appropriate under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and would not be able to rectify those conditions within a reasonable time, MCL 712A.19b(3)(c)(*i*). In this case, the record supported the trial court's findings that more than 182 days had elapsed since the issuance of the initial dispositional order, the conditions that led to the adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering AK's age.

The conditions that led to adjudication in this case were primarily respondent's mental health, domestic violence, parenting skills, and substance abuse. Respondent was offered numerous services for approximately 21 months to enable him to reunite with AK, but he failed to participate in and benefit from virtually all of the services. Respondent completed a parenting-support and education program, but his caseworker testified that he demonstrated no benefit from the program. Respondent missed approximately 35% of his parenting time and did not demonstrate adequate or safe parenting skills during the visits. Respondent never progressed to unsupervised parenting time as a result. Respondent missed nearly half of his drug screenings, and he tested positive for THC in every drug screen that he completed. Respondent knew that he could not use marijuana until he obtained a medical card, but he continually used marijuana throughout the case without first doing so. Respondent never completed intake paperwork for several facilities, despite constant reminders and offers of assistance from his caseworker, so he never began counseling, anger-management, domestic-violence, and substance-abuse services. Respondent admitted that he did not participate in most of his services throughout this case, that he should have done more to address his barriers to reunification, and that he was only motivated to start some services a month before the termination hearing because the judge handling his probation had threatened him with jail time if he did not do so. Respondent testified that he could complete the recommended therapy within a month if he consistently attended his appointments, but the psychologist who completed respondent's psychological evaluation testified that it would take respondent a minimum of a year to complete such an intensive therapy program.

Given respondent's lack of participation and failure to demonstrate any benefit from the few services that he completed during the 21-month pendency of this case, respondent's caseworker did not believe that respondent would participate in services and rectify his barriers if given additional time. The trial court therefore did not clearly err by concluding that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[6]

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[6] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent's arguments regarding MCL 712A.19b(3)(j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Additionally, respondent raises a cursory argument that DHHS did not make reasonable efforts toward reunification because it did not reasonably accommodate his mental disabilities. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted). Because respondent failed to adequately brief the issue, he has abandoned it on appeal. See *id*.